**Sherri D. HICKS, Appellant,**

v.

**Joseph E. KUBIT, Appellee.**

Superior Court of Pennsylvania.

Submitted May 22, 2000.
Filed Aug. 4, 2000.

Charles P. Voelker, Pittsburgh, for appellant.

Dorothy Petrancosta, Butler, for appellee.

Before CAVANAUGH, EAKIN and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 This is an appeal from an order distributing the parties' marital assets and marital debts, and denying Appellant's request for alimony.

¶ 2 The parties to this matter were married in October of 1992, and separated in August of 1996. Their divorce became final in October of 1999. There are no children and virtually no assets. At the time of trial, April of 1999, Appellee was 36 years old, an attorney with 15% partnership in a small law firm acquired after separation, and from which he earns $35,000 per year. He also conducts an independent practice from which he expected to earn an additional $15,000 in 1999. Appellant was 30 years old at the time of trial and unemployed, but had, in 1996, completed a bachelor's degree in English writing, and had earned $30,000 plus commissions per year in activities related to ice skating; it was not clear whether, at termination in November of 1998, she had quit or been fired from this position.

* Retired Justice assigned to Superior Court.

¶ 3 For the first 18 months after separation, Appellee made voluntary support payments. In March of 1998, pursuant to a claim for support filed the previous February, Appellant was awarded $260 per month, which was reduced to $183 per month the following July. As of the time of trial there were less than $5 in arrearages.

¶ 4 The primary dispute centers around allocation of marital debt. Prior to the marriage, Appellant had borrowed $11,875 to pay for her education at the University of Pittsburgh. During the marriage, she borrowed an additional $30,776, of which, according to Appellant's testimony, $13,000 was deposited into the parties' joint account to cover joint living expenses. In addition, Appellee had been paying a $9,700 loan from the senior partner in his law firm.

¶ 5 Accepting the report and recommendations of the master, the trial court divided the marital assets, a total of $5,200,[1] 60% to Appellant and 40% to Appellee. It further found that the marital debt consisted of the $13,000 borrowed by Appellant which was used for joint purposes, and the $9,700 loan from Appellee's law partner. This amount was allocated 60% to Appellee and 40% to Appellant. The $11,875 which Appellant had borrowed prior to the marriage was determined not be marital, as was the balance of the $30,776 borrowed during the marriage and used to pay for Appellant's education. Appellant's alimony claim was denied. This appeal followed.

¶ 6 This appeal presents four issues which we will address seriatim.

■■■ ¶ 7 We note that our standard in reviewing the propriety of equitable distribution awards is broad: we will not disturb a trial court's determinations absent an abuse of discretion, that is, if the trial court failed to follow proper legal proce-

dures or misapplied the law. Nor will we usurp the trial court's duty as factfinder. *Verholek v. Verholek*, 741 A.2d 792 (Pa.Super.1999)(*en banc*). Our consideration of the case includes all of its circumstances and the conclusions of the trial court in light of the legislative policy of effectuating economic justice between the parties. *Cohenour v. Cohenour*, 696 A.2d 201, 203–04 (Pa.Super.1997); 23 Pa.C.S.A. § 3102(a)(6).

■■■ ¶ 8 Appellant first argues that "the trial court erred in finding that only a small portion of student loans borrowed during the course of the parties' marriage constituted marital debt." (Appellant's Brief at 5). Relying on this Court's decision in *Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382 (1996), she contends that the point in time at which the debt is incurred determines whether it is marital or otherwise, and, since $30,776 was borrowed during the marriage, that whole amount is marital debt. She is indeed correct in asserting that case authority supports her position. *See Drake v. Drake*, 555 Pa. 481, 725 A.2d 717 (1999); *Litmans, supra.* The trial court erred insofar as it characterized the debt as nonmarital on the basis of how the loan proceeds were expended.

¶ 9 In *Duff v. Duff*, 510 Pa. 251, 507 A.2d 371 (1986), our Supreme Court found that tax liabilities accruing from the sale of stock prior to separation was a joint debt of the parties regardless of the use to which the proceeds of the stock sale were put. However, in remanding to the trial court for reevaluation of the distribution in light of the joint liability, the Court specifically declined to recommend how a new distribution should be made. Thus because a debt is characterized as marital is not necessarily determinative of which party is liable for its satisfaction.

---

1. This amount represents the sum of the marital portion of Appellee's pension, $2,700, and the value of Appellee's automobile, $2,500.

¶ 10 Appellant herein conflates the status of the debt with its apportionment, and would have us assign the whole in the proportions as already established. However, as *Duff* makes clear, nomenclature does not determine the ultimate distribution of either assets or liabilities. Rather, that decision is to be based on the circumstances surrounding the acquisition of the debt or asset, along with all other factors relevant to fashioning a just distribution. *See* 23 Pa.C.S.A. § 3502. Thus despite any error in the terminology used by the court to describe the balance of the loan applied to Appellant's educational expenses, the court properly noted that its discretion extended to assigning the debt to Appellant on the equitable principle that she received the sole and exclusive benefit of the education financed by such means. As the court observed, "whether the education debt is marital or not is of significance, but not ultimately determinative of who shall be responsible for its repayment." (Trial Ct. Op. at 5). Since Appellant was to be the exclusive beneficiary of the education, that portion of the marital debt derived from her education properly belonged to her.[2]

¶ 11 Appellant next argues that the court abused its discretion in failing to consider as a marital debt the interest accruing on her education loans. The same analysis applies here as to the underlying debt, and the result, too, remains the same.

¶ 12 Appellant also contends the court erred in denying her claim for alimony. She bases her argument on the disparate economic situations of the parties, the differences in their earning capacity, and her need for support to continue her education. The trial court, having adopted the master's recommendations, found that the brevity of the marriage, Appellant's education, age and proven earning capacity justified the denial of alimony.

¶ 13 Our scope of review in assessing the propriety of an award or denial of alimony is to determine whether the trial court's order is motivated by prejudice, bias or ill-will, or whether the court has overridden or misapplied the law. If so, the court has abused its discretion, and we are not bound by its conclusions. Absent these errors, where the court's decision is substantiated by the record and supported by applicable case law we must affirm. *Wagoner v. Wagoner*, 538 Pa. 265, 648 A.2d 299 (1994); *Gilliland v. Gilliland*, 751 A.2d 1169 (Pa.Super.2000). Moreover, alimony is not meant as a punishment or reward, but "to ensure that the reasonable needs of the person who is unable to support himself/herself through appropriate employment are met." *Gilliland*, 751 A.2d at 1174 (quoting *Jayne v. Jayne*, 443 Pa.Super. 664, 663 A.2d 169, 174 (1995)). It was Appellant's burden to prove her entitlement to support. *Asin v. Asin*, 456 Pa.Super. 515, 690 A.2d 1229 (1997).

¶ 14 Appellant failed to carry her burden. Although the trial court mistakenly stated that Appellant had not applied to graduate school, she only did so for the fall of 1999 although she had been unemployed since November of 1998, and had been receiving support from Appellee since the parties' separation in August of 1996. She is young, has a college degree, is without dependents, and has an earning capacity of $30,000 per year. Her indebtedness for educational expenses is not unique and does not entitle her to further financial assistance from Appellee. The trial court correctly denied her request.

¶ 15 Finally, Appellant argues that the trial court erred in deferring payment of her equitable share in the marital estate to the date of Appellee's retirement rather than making it immediately available to her. Before addressing the merits of Appellant's claim, we must decide

2. Appellant's proposed division of the debt lessens her liability by approximately $10,600. The difference is between 40% of $30,776 ($12,310), Appellant's preferred allocation, and the actual allocation 40% of $13,000 ($5,200) plus $17,776 ($22,976).

whether it is properly before this Court. The trial court noted that the issue had not been briefed for the court nor mentioned at oral argument on exceptions, although it was included in Appellant's statement pursuant to Pa.R.A.P.1925(b), and concluded that the method of distribution was both supported by the record and within the court's discretion. Because it has been preserved through both exceptions and Appellant's statement of matters complained of on appeal, the matter has been preserved. *Compare Jara v. Rexworks, Inc.*, 718 A.2d 788 (Pa.Super.1998) *appeal denied*, 558 Pa. 620, 737 A.2d 743 (1999) (although Appellant did not file post trial motion for new trial after Appellees had sought retrial on damages only, issues were not waived for appeal where they had been included in 1925(b) statement, and had been addressed by trial court).

▪ ¶ 16 With regard to pensions,
[i]n formulating equitable distribution schemes, Pennsylvania courts apply either the immediate offset method, which divides the benefits at the time of the equitable distribution proceeding by assigning a present value to the marital portion of the pension, or the deferred distribution method, which requires the court to reserve jurisdiction over the benefits until they mature or enter pay status.

*Brown v. Brown*, 447 Pa.Super. 424, 669 A.2d 969, 972 (1995), *aff'd by an equally divided court*, 547 Pa. 360, 690 A.2d 700 (1997).

▪ ¶ 17 In this, as in all other aspects of equitable distribution awards, the trial court's decision will be reversed only for abuse of its discretion. *Id.* In *Zollars v. Zollars*, 397 Pa.Super. 204, 579 A.2d 1328 (1990), this Court found that because there were insufficient marital assets to satisfy the wife's equitable share of the husband's pension, distribution of the $106,013 she was owed should be deferred. In *Endy v. Endy*, 412 Pa.Super. 398, 603 A.2d 641, 644 (1992), we observed that "[t]hough (sic) [the immediate offset method] is the pre-

ferred alternative because it avoids continuing contact between the parties, this method is impractical where the parties do not possess sufficient assets to offset the pension award." In the present case, there are no cash assets in the marriage, thus, it would seem appropriate to defer payment of Appellant's share of Appellee's pension. We find no abuse of discretion in the trial court's disposition.

¶ 18 Order affirmed.