J-A04006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH J. PIOTTI, JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JULIE R. PIOTTI, | |
| Appellant | No. 899 WDA 2014 |

Appeal from the Decree April 30, 2014
In the Court of Common Pleas of Blair County
Civil Division at No(s): 2010 GN 3057

BEFORE:  BOWES, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                          **FILED JUNE 17, 2015**

Julie R. Piotti ("Wife") appeals from the trial court's second amended divorce decree and order of equitable distribution.  We affirm in part, reverse in part, and remand for further proceedings.

Wife and Joseph J. Piotti, Jr. ("Husband") married on April 27, 1995 and separated on July 29, 2010.  No children were born of the marriage.  On August 13, 2010, Husband filed a complaint in divorce seeking only to dissolve the marriage.  Wife's answer and counterclaim requested that the trial court equitably divide the marital assets.  Additionally, Wife sought counsel fees, alimony *pendente lite*, spousal support, and permanent alimony.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

This was the second marriage for each party. Wife is fifty-seven years old. Following the separation, Wife maintained exclusive possession of the marital home, which was her premarital property until she transferred it into joint names in 1999.[1] She earns approximately $8,800 per year from a part-time position at Penn State University that does not provide any benefits. Since January 2012, she received $848 per month spousal support plus $56 toward arrears. Husband, who is approximately sixty years old, resides with his girlfriend, with whom he has two children. He is employed fulltime by Penn State University, runs a small, intermittent carpet cleaning operation, and maintains a part-time position at a local country club. His spousal support obligation to Wife and the accrued arrears are deducted monthly from his paycheck from Penn State.

The parties owned several assets including the marital residence, two rental properties, $10,030.66 proceeds from the then-recent sale of a third property, two automobiles, a motorcycle, a bass fishing boat, miscellaneous personal property, Husband's pension benefits, and savings and annuity accounts. The marital debts and liabilities included mortgages on two of the homes, the balance on an open line of credit, vehicle loans for one automobile and the motorcycle, credit card debt, and real estate taxes.

_____

[1] "Where a spouse places separate property in joint names, a gift to the entireties is presumed absent clear and convincing evidence to the contrary." **Lowry v. Lowry**, 544 A.2d 972, 978 (Pa. Super. 1988).

Additionally, Wife owes approximately $70,000 in student loans, interest, and fees.

The trial court appointed a divorce master to address the dissolution of the marriage and Wife's economic claims. On February 28, 2013, the parties adduced evidence before the divorce master, and on July 30, 2013, the master filed with the trial court its report and recommendations. As the trial court's subsequent alterations to the master's recommendation and its own ensuing equitable distribution orders are the bases for Wife's arguments on appeal, we outline those determinations with specificity.

The master recommended that the court grant the divorce and distribute the marital property so that Wife would receive marital equity totaling approximately $48,000. That amount included the marital home, one of the rental properties, and the entire proceeds from the recent sale of an investment property. Husband was assigned approximately $93,000 in marital equity, including the remaining rental property, the motorcycle, and his contributions to the Pennsylvania State Employees Retirement System ("SERS"). In order to resolve the $45,000 difference between the parties' equitable shares of the marital assets, the master devised a scheme wherein Husband would pay Wife an additional $22,500 in monthly installments secured by a second mortgage against the income property that he received in equitable distribution. Finally, the master recommended that the trial court deny Wife's request for alimony and counsel fees and that she be responsible for the balance of the the master's fees.

Both parties filed exceptions to the master's report and recommendations. Wife leveled seven exceptions, including that: (1) the master's valuation of the SERS pension was flawed in that it was calculated using Husband's contributions to the pension account rather than the defined benefit that he is entitled to receive upon reaching pay status; (2) the equal division of assets and debts failed to account for Husband's significantly enhanced monthly income; (3) the master ignored the $70,000 student loan debt that accrued during the marriage; and (4) the master erred in denying her request for alimony and attorneys' fees. Wife failed to list an exception challenging the omission of Husband's AXA Equitable annuity totaling $1,862.03 from the master's equitable distribution scheme. Wife raised this misstep for the first time with the trial court in a supplemental brief filed after oral argument regarding the parties' respective exceptions of the master's report and recommendations.

Husband's exceptions challenged the master's respective valuations of the marital residence that Wife received and the income property that he was assigned. Husband posited that since Wife received from the marital estate $4,500 in additional assets due to those errors, he should be relieved from paying her the additional $22,500.

On January 31, 2014, the court entered a divorce decree and equitable distribution order that outlined changes to the master's recommendations and explained its rationale in resolving the parties' respective exceptions. The trial court sustained Husband's exception concerning the equity in the

marital residence and sustained Wife's exceptions regarding the valuation of Husband's pension and alimony. The trial court determined that, since Wife failed to level her assertion regarding the AXA Equitable annuity in a timely exception, that issue was waived. The trial court also noted that the master declined to specifically identify several *de minimis* assets, such as the annuity in the proposed distribution schedule, because they were uncontested or already in the parties' possession. All of the remaining exceptions were denied.

The ensuing equitable distribution order reduced Husband's payment to Wife from $22,500 to $11,033.34, directed that the marital portion of Husband's defined benefit pension be disbursed according to a qualified domestic relations order[2] ("QDRO"), and awarded Wife $500 per month alimony for one year. Significantly, the trial court declined to assess against Husband the marital portion of Wife's student loan debt. Essentially, the court concluded that the certified record sustained the master's purported credibility determination that Husband "was unaware that [Wife] had taken

---

[2] In **Smith v. Smith**, 938 A.2d 246, 248 n.3 (Pa. 2007) (citation and internal quotations omitted), our Supreme Court explained, "A QDRO is an order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the plan. To be qualified, the order must contain certain required information and may not alter the amount or form of plan benefits."

excess student loans to spend at her discretion." Trial Court Opinion and Order, 1/31/14, at 15.

Husband filed a timely motion for reconsideration seeking what he claimed was the true value of the marital assets that he was awarded. On February 18, 2014, the trial court granted the motion for reconsideration, thus tolling the appeal period pursuant to Pa.R.C.P. 1930.2.[3] Thereafter, on March 27, 2014, the trial court entered an amended opinion and order wherein it sustained Husband's exceptions concerning: (1) the value of the income property he received; and (2) Wife receiving $4,500 in surplus assets from the marital estate. Accordingly, the trial court reduced the value of Husband's rental property, increased Husband's share of the proceeds from the sale of the investment property, and relieved Husband from making **any** additional payments to Wife.

On April 7, 2014, Wife filed a motion for reconsideration. The trial court granted the motion on April 25, 2014, tolling the thirty-day appeal period for the second time. Thereafter, on April 30, 2014, the trial court entered a second amended divorce decree and equitable distribution order. In total, the court's directives extended Wife's entitlement to alimony from one year to eighteen months and continued to sustain her original challenge

---

[3] Pa.R.C.P. 1930.2 (d) provides "[t]he time for filing a notice of appeal will begin to run anew from the date of entry of the reconsidered decision, or, if the court does not enter a reconsidered decision within 120 days, from the 121st day."

to the valuation of Husband's pension. The court did not alter its denials of any of Wife's remaining exceptions. This timely appeal followed.

The trial court did not order Wife to file a concise statement of errors complained of on appeal. Wife presents the following issues for our review, which we reordered for convenience of disposition:

[I.] Whether the trial court erred and/or abused its discretion in failing to include in its determination of equitable distribution an annuity, obtained during the marriage, which was omitted by the Master in his recommended distribution schedule.

II. Whether the trial court erred and/or abused its discretion in failing to give appropriate consideration to the Defendant's substantial student loan debt incurred during the marriage in determining the equitable distribution of the parties' marital property and the amount and duration of the alimony award.

[III]. Whether the trial court erred and/or abused its discretion in ordering a 50/50 division of marital assets given the significant disparity in the parties respective economic circumstances and the Defendant's substantial student loan debt.

[IV]. Whether the trial court's adjustments to the Master's recommendations, and its subsequent adjustments to its own orders and decrees on reconsideration, resulted in an overall resolution of the parties economic claims that fails to effectuate economic justice between the parties as required by the Divorce Code and, therefore, constituted an abuse of discretion.

[V]. Whether the trial court erred and/or abused its discretion in determining the amount and duration of the alimony award under all of the facts and circumstances of this case.

[VI]. Whether the trial court erred and/or abused its discretion in denying the Defendant's request for costs and counsel fees under all of the circumstances of this case.

Wife's brief at 5-6.[4]

The following principles guide our review.

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.
>
> *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa.Super. 2005) (internal quotations omitted). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa.Super. 2005).

*Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super. 2006). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. *Wang v. Feng*, 888 A.2d 882, 887 (Pa.Super. 2005).

Initially, we must determine whether the trial court erred in omitting a marital asset from its calculation of the marital estate. This issue concerns Husband's AXA Equitable annuity in the amount $1,862.03, which the master did not specifically allocate in the recommended equitable distribution schedule. While Wife does not object to Husband's retention of

_____

[4] Husband did not file a brief or participate in oral argument before this Court.

the annuity, she believes that she would have received an additional $931 in equitable distribution had the master listed the annuity specifically. As noted, *supra*, Wife failed to identify this complaint among her exceptions to the master's report and recommendations. Therefore, the trial court deemed the issue waived. Additionally, the trial court explained that the annuity was one of several assets that the master declined to identify specifically in the proposed equitable distribution schedule due to their *de minimis* nature. Upon review of the Wife's argument and the certified record, we find no relief is due.

At the outset, it is beyond argument that Wife's claim is waived. It is a well-ensconced principle of law that parties in domestic relations cases are required to level specific exceptions to a master's report and recommendation in order to preserve issues for appellate review. **Nagle v. Nagle**, 799 A.2d 812, 821 (Pa.Super. 2002) (issue waived because it was not included in exceptions to the master's report). As Wife did not level this assertions in her exceptions, the matter is waived.

Furthermore, to the extent that the trial court addressed Wife's claim in its opinion and order entered on January 31, 2014, the record reveals that the master did, in fact, include Husband's annuity in the marital estate and simply declined to enumerate the $1,862.03 endowment in disseminating its value to Husband pursuant to the proposed schedule. **See** Master's Report and Recommendation, 7/30/13, at ¶ 29 ("Plaintiff has a Tax Sheltered Annuity invested through AXA Equitable that had a balance as of March 8,

- 9 -

2013 of $1,863.03."). The record also supports the trial court's observation that the omission was not an oversight, but rather, a product of the master's deliberate decision to omit *de minimis* assets, such as insurance proceeds and rental income retained by Wife, that were both uncontested and too insignificant to disturb the equal division of the marital estate. In essence, the master treated the *de minimis* assets as if they were personal property that the parties agreed would be retained by the party in possession. Significantly, Wife received the value of her share of the annuity by retaining other assets that were properly designated as marital property but not expressly identified in the master's equitable distribution schedule.

Ideally, a recommended equitable distribution schedule would account specifically for the entire marital estate, even uncontested personal property and assets already in the parties' possession. However, under the circumstances of this case, where the master focused on the equitable distribution of substantial marital assets such as Husband's pension benefits, three properties, proceeds from the sale of another property, and three motor vehicles, the decision to omit the *de minimis* uncontested assets from the recommended schedule is justifiable. No relief is due.

Next, we address Wife's contention that the trial court erred in burdening her with the entire amount of student loan debt. The trial court indicated that Wife received $40,125 in student loans between August 2007 and August 2009. She incurred additional student loan debt immediately after the parties' separation. The repayment terms for all of the student

loans commenced post-separation. The master's report stated that the total student loan debt, including interest, fees, and penalties, exceeded $70,000. As of February 15, 2013, Wife risked having her wages garnished to satisfy the debt.

Wife argues that she incurred the debt with Husband's express support, approval, and reassurance that the couple would repay the loans after Wife obtained a college degree and enhanced her opportunities for full-time employment. Additionally, referencing our discussion in *Hicks v. Kubit*, 758 A.2d 202 (Pa.Super. 2000), which we discuss *infra*, Wife posits that the couple used portions of the money for household expenses. The crux of Wife's argument is that the trial court did not consider all of the circumstances surrounding the acquisition and use of the student loan debt or the parties' respective financial wherewithal to repay the loan in light of the equitable distribution scheme. Wife's position is meritorious.

In rejecting Wife's argument, the trial court concluded that Wife accepted $40,125 in student loans during the marriage, that the loans were in her name, and that she controlled the use of the loan proceeds. The court further determined, "The record indicates that [Husband] was unaware that [Wife] had taken excess loans to spend at her discretion." *See* Second Amended Opinion and Order, 4/30/14, at 17. Thereafter, the trial court purported to defer to the divorce master's credibility determination. Significantly, however, the master did not make any express credibility determinations relevant to this issue or address any of the factors outlined in

- 11 -

*Hicks*. The master simply noted that Wife owed student loans exceeding $70,000, and then failed to account for that debt in the recommended distribution scheme. While it is obvious that the master elected to burden Wife with the entire debt, the master did not disclose any reason for its decision, much less render any findings on this point. Accordingly, we cannot countenance the trial court's reliance upon the master's non-existent credibility determination as a basis to sustain that decision.

*Hicks*, *supra*, is the seminal case involving the assignment of student loan debt in equitable distribution. To be clear, the salient principles in *Hicks* are that student loan debt incurred during a marriage is a marital debt regardless of the purposes for which the money is actually expended; however, in assigning responsibility to repay the debt following divorce, the fact finder must look to which party benefited from the education the loan facilitated. In *Hicks*, the wife incurred $30,776 in student loan debt during the marriage. She deposited $13,000 of the loan proceeds into a bank account that she shared with her husband and the couple used that portion of the money to cover joint living expenses. The balance of the loan proceeds went to educational expenses. The trial court in that case concluded that the $13,000 that was used for joint purposes was marital debt, but the portion of the loan that was used to pay for the wife's education was non-marital. Consistent with the equitable distribution scheme that divided the marital assets 60/40 in favor of the wife and allocated the marital debts in the inverse proportion, the trial court assigned

the wife responsibility for 40 percent of the $13,000 and 100 percent of the balance used for educational purposes. On appeal, the wife asserted that the trial court should have considered the entire student loan, and not just the $13,000 deposited into the joint account, as marital debt subject to the equitable distribution scheme.

In affirming the trial court's equitable distribution order, we clarified that student loans borrowed during the course of the parties' marriage constitute a marital debt for purposes of determining an equitable distribution award. *Id*. at 204-205. Thus, we found that it was error for the trial court to characterize any portion of the loan debt as "non-marital" based upon how the loan proceeds were expended. *Id*. at 204. However, notwithstanding the designation of the entire loan as marital property, we explained that the label is not determinative of the ultimate question regarding which party is responsible for satisfying the student loan debt. *Id*. at 205. We stated, "[W]hether the . . . debt is marital or not is of significance, but not ultimately determinative of who shall be responsible for its repayment." *Id*. Rather, that determination should be based upon "the ultimate distribution of either assets or liabilities . . . is to be based on the circumstances surrounding the acquisition of the debt or asset, along with all other factors relevant to fashioning a just distribution." *Id*. In essence, we reasoned that the spouse who received the exclusive benefit of the education is ultimately responsible for the portion of the student loan applied to education expenses. "Thus, despite any error in the terminology used by

the court to describe the balance of the loan applied to [the wife's] educational expenses, the court properly noted that its discretion extended to assigning the debt to [the wife] on the equitable principle that she received the sole and exclusive benefit of the education financed by such means." *Id*. Hence, the *Hicks* Court held that, since the wife was the exclusive beneficiary of the education she received, she was responsible for the portion of the loan that went to that purpose. Accordingly, we did not disturb the trial court's equitable distribution scheme allocating the $13,000 debt between the parties on the 60/40 basis but making the wife 100 percent responsible for the balance of the loan proceeds.

Initially, we observe that neither the master nor the trial court in the instant case specifically identified any portion of the student loan as marital debt or differentiated between the student loan proceeds that went directly to Wife's education expenses and the surplus proceeds that were used for non-educational expenses. Pursuant to *Hicks*, as the ultimate beneficiary of her college education following her divorce from husband, Wife is responsible for the student loan debt that is attributed to her educational expenses even though it would be properly designated as a marital debt. However, the *Hicks* Court did not mandate that all student loan debts are invariably assigned to the student spouse. Indeed, the *Hicks* Court affirmed the trial court's finding that $13,000 of the student loan proceeds were marital debts subject to the 60/40 equitable distribution scheme in that case because those proceeds were deposited into a joint account and used for personal

expenses. **See id**. at 205. Instantly, the trial court highlighted in its second amended opinion and order that a significant surplus existed after Wife paid her educational expenses. However, neither the trial court nor the divorce master calculated the amount of the surplus. Indeed, the master assigned the entire balance of the student loan to Wife uncritically and without determining what portion of the current $70,000 balance should be designated a marital debt under **Hicks**, **supra** or whether any portion of the marital amount was used for a joint purpose unrelated to education expenses.

As noted *supra*, Wife contends that the parties made a joint decision for her to pursue a college degree, that prior to the separation Husband reassured her that they would repay her mounting student loan debts, and that a portion of the loan proceeds was used for living expenses. During the master's hearing, she testified that she used the excess student loan proceeds to purchase food, pay for household expenses, and contribute to the couple's lifestyle. N.T., 2/28/13, at 84, 87, 94, 96. She stated that she did not buy anything frivolous with the proceeds or purchase "[anything] that wasn't used by both of [them]." **Id**. at 84. Although Wife cashed the student loan checks rather than deposit the proceeds into a joint account, she stressed that Husband benefited equally from the balances of the loan proceeds because she only used the money for household items and joint expenses. **Id**. at 87, 94, 96. Additionally, she testified that Husband observed the checks and knew the amounts distributed and what she

contributed to their household. *Id*. at 95, 98. Accordingly, Wife requested that the master allocate the student loan debt consistent with the equitable distribution scheme. *Id*. at 110.

Husband counters that he was unaware that Wife took out student loans in excess of what was required to pay college expenses and that Wife consumed the surplus funds at her sole discretion. During the hearing, Husband testified that he had no involvement in the student loan process. *Id*. at 115. He was aware that Wife received student loan proceeds but could not differentiate between Wife's earnings from part-time employment and the money she received from the loans. *Id*. at 115, 117.

The master, as the ultimate finder of fact, did not render any determination regarding the amount of the surplus loan proceeds or how those funds were consumed. While the trial court identified several indications in the record concerning the extent of Husband's knowledge about the loans, Wife's control over the amount of the loan request, and how the surplus proceeds were expended, those "findings" do not warrant the deference this Court reserves for factual determinations because the trial court in this case did not preside over any evidentiary proceedings. In actuality, the trial court reviewed a cold record and, without acknowledging Wife's countervailing evidence, it gleaned select references from the notes of testimony of the February 2013 hearing in front of the divorce master. In this regard, the trial court's review of the master's hearing is no different from our own. *Cf*. *Commonwealth, Dept. of Trans. v. O'Connell*, 555

A.2d 873, 875 (Pa. 1989) (deference due to factfinder stems from "sole position to observe the demeanor of the witnesses and assess their credibility. Th[i]s rule of law is well established in our jurisprudence and is rooted in concepts of fairness, common sense and judicial economy"); **Commonwealth v. Wright**, 78 A.3d 1070, 1080 n.12 (Pa. 2013) (observing that abuse-of-discretion rubric "may be something of a misnomer because the deference derives more from the role and respective vantage of the factfinder than from any accordance of 'discretion'").  As a fact-finder never resolved the parties' contradictory evidence regarding the use and nature of the surplus loan proceeds, we remand the matter for an evidentiary hearing to determine whether any portion of the loan proceeds were expended for joint purposes and to apportion that share of the student loan principal, interest, and fees, between the parties accordingly.

Next, we address Wife's third, fourth, and fifth issues collectively. Wife asserts that, given the disparity between the parties' respective economic conditions, the trial court erred in fashioning an equal division of marital assets.  Instead of receiving fifty percent of the value of the marital estate, Wife advocates a 60/40 division of the assets in her favor.  She also stresses that the marital property she received under the trial court's amended equitable distribution scheme lacks liquidity, and that the temporary alimony the court awarded is insufficient to permit her to survive. For the reasons explained below, we find no basis to disturb the trial court's decision to divide the marital estate equally.  However, we find that the

record supports Wife's remaining contentions regarding the reality of her current economic circumstances.

The primary focus of Wife's argument is that the equitable distribution order failed to effectuate economic justice in light of the parties' respective economic circumstances. She highlights that, when compared to Husband, she is underemployed and her only source of supplemental income is a rental property that is encumbered by a mortgage that consumes all but $180 of the monthly income it generates. After accounting for insurance and property taxes, the income from the rental property is minimal. Wife earns approximately $8,800 per year salary without health or retirement benefits, and her total allocation of cash from the equitable distribution is approximately $1,000.

She further highlights that the equitable distribution order fails to alleviate her economic burden due to the fact that the marital home that she received accounts for approximately sixty-percent of the total value of her share of equitable distribution. Wife does not challenge the finding that the residence was marital property subject to equitable distribution; however, she contends that the trial court should have factored in the specific circumstances of the case when assessing the property's value against her portion of the marital estate.

In contrast to Wife's sparse monthly budget, Husband enjoys fulltime employment with Penn State University and maintains part-time positions at his carpet cleaning business and a local country club. Additionally, Wife

asserts that, unlike her income-producing property, Husband nets approximately $900 per month from his income property after deducting taxes, mortgages, and insurance premiums. Wife continues that Husband was not burdened with any of the marital debt other than the loans on the property he received in the equitable distribution, and pursuant to the equitable distribution order, he will receive approximately eighty percent of the escrowed proceeds from the prior sale of a property that was included in the marital estate.

In fashioning an equitable distribution scheme, the trial court is required to consider the factors enumerated in 23 Pa.C.S. § 3502(a), which provides as follows:

> **(a) General Rule**.—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. . . . Factors which are relevant to the equitable division of marital property include the following:
>
> (1) The length of the marriage.
>
> (2) Any prior marriage of either party.
>
> (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
>
> (4) The contribution by one party to the education, training or increased earning power of the other party.
>
> (5) The opportunity of each party for future acquisitions of capital assets and income.

- 19 -

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

As we stated in **Gates v. Gates**, 933 A.2d 102, 105 (Pa.Super. 2007) (citations omitted), the enumerated factors "require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship."

Instantly, we find no basis in the certified record to disturb the trial court's 50/50 division of the marital debts and assets. Primarily, we observe that the record confirms that the divorce master considered the relevant factors in formulating the proposed equitable distribution scheme and that

the trial court accepted most of those findings in adopting the recommendations and in subsequently amending the equitable distribution order. Specifically, the master considered the length of the parties' marriage, prior marriages, age, health, employment opportunities, child dependents, respective sources of income, value of property received, and Husband's pension. *See* Master's Report and Recommendations, 7/23/13, at 2-9;[5] Second Amended Opinion and Order, 4/30/14, at 3-5, 12, 15-16.

The aspects of § 3502(a) implicated by Wife's arguments relate to the court's considerations regarding: (1) the parties' respective sources of income; (2) their opportunities to acquire additional capital assets and income in the future; (3) their vocational skills, employability, and liabilities; and (4) the general consideration of each parties' economic circumstances at the time the division of property is to become effective. The first three components of this argument basically request that this Court re-weigh the evidence and modify the equitable distribution order in her favor. However, in light of our deferential standard of review, we must reject this entreaty. *See Gates*, *supra* at 106 ("[I]t is apparent appellant is urging us to simply reweigh the section 3502 factors in the hope the scales will tip in his favor the second time around. We cannot do so in the absence of an abuse of discretion, which appellant has failed to demonstrate."); *see also*

_____

[5] The Master's Report is not paginated. We assigned page numbers for ease of reference.

*Mercatell*, *supra* at 612 (trial court has discretion to assign weight to various factors). Stated simply, Wife failed to demonstrate that the trial court abused its discretion in accepting the master's application of the § 3502(a) factors in fashioning the 50/50 division of marital assets. Thus, we will not disturb it.

Notwithstanding our unwillingness to reweigh the § 3502(a) factors and substitute our judgment for that of the divorce master and trial court in order to alter the equal division of assets, we are compelled to note that the equitable distribution order does not account for Wife's economic circumstances when the division of property was to become effective. Specifically, the order fails to address the scarcity of liquid assets available to Wife. Although Wife concededly received an equal share of the marital estate, her share is composed of equity in real property that cannot be easily converted to cash. In addition to her personal property, Wife was awarded the marital residence and an income-producing property that generates a trifling net monthly income after expenses. The record bears out that both of the properties are encumbered by a mortgage, and that the monthly income generated from the rental property is minimal. N.T., 2/28/13, at 36-37.

While the master's report and recommendation proposed to award Wife monthly payments totaling $22,500, the trial court reduced that award to $11,033.34, and it subsequently eliminated the cash outlay entirely.

Additionally, Wife's portion of the proceeds from the sale of a marital property, about $1,000, is negligible, and her spousal support terminated as a matter of law with the entry of the divorce decree. *See Horn v. Horn*, 564 A.2d 995, 996 (Pa.Super. 1989).[6]  Finally, Wife complains the trial court's award of temporary alimony is an insufficient supplement to her monthly income.

Wife's latter complaint implicates her related argument in favor of an increased alimony award. The crux of that contention is that, even with employment, she is unable to support herself without the benefit of additional cash assets or a substantial alimony award that extends beyond the eighteen months awarded by the trial court. As the trial court's decision regarding the distribution of marital property is interrelated with the award of alimony insofar as a revision of the distribution scheme necessarily requires reconsideration of the alimony award, we address her arguments together as they relate to her current cash flow issues and conclude that the court's uneven allocation of liquid assets not only ignored Wife's current economic condition, but it also diverged from the overarching objective of

_____

[6] Spousal support is specifically designed to ensure that the dependent spouse can maintain reasonable living expenses, and a spousal support order terminates upon the entry of the divorce decree. *See Horn v.Horn*, 564 A.2d 995, 996 (Pa.Super. 1989) (citations omitted) ("The duty to provide spousal support is derived from marital obligations, and that duty terminates when the marriage does."). Wife remains entitled to any unpaid arrears that accrued prior to the entry of the divorce decree.

effectuating economic justice between the parties. *See* 23 Pa.C.S. § 3502;

*Mercatell supra* at 612 ("equitable distribution does not presume an equal

division of marital property and the goal of economic justice will often dictate

otherwise").

In determining whether alimony is necessary, the trial court was

required to consider the enumerated factors set forth in 23 Pa.C.S. § 3701.[7]

---

[7] The section of the Domestic Relations Code addressing alimony provides:

   . . . .

**(b) Factors relevant**.—In determining whether alimony is
necessary and in determining the nature, amount, duration and
manner of payment of alimony, the court shall consider all
relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions
of the parties.

(3) The sources of income of both parties, including, but not
limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or
increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial
obligations of a party will be affected by reason of serving as the
custodian of a minor child.

*(Footnote Continued Next Page)*

Instantly, Wife does not challenge the trial court's consideration of any of

*(Footnote Continued)* _____

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

**(c) Duration**.—The court in ordering alimony shall determine the duration of the order, which may be for a definite or an indefinite period of time which is reasonable under the circumstances.

23 Pa.C.S. § 3701(b)(c).

the statutory factors. Instead, she argues that the alimony award fails to satisfy her reasonable needs in light of her current economic situation.

As previously noted, in declining Wife's request for alimony, the divorce master considered the relevant factors outlined in § 3701(b), but concluded that the then-envisioned lump sum payment of $22,500 would be sufficient to fund Wife's transition to economic independence. Upon review of the parties' exceptions to the master's report, the trial court reduced Wife's expected lump sum payment from $22,500 to $11,033.34, and awarded Wife $500 per month temporary alimony for one year as a short-term supplement. After the trial court ultimately eliminated the lump-sum payment entirely, it extended the duration of temporary alimony award from twelve months to eighteen months.

Mindful of Wife's noticeably different economic condition between the master's originally proposed distribution scheme and the culmination of the trial court's piecemeal adjustments to the original scheme, we find that the one-and-one-half-year period of alimony is insufficient to adequately compensate for Wife's reduced cash flow after the court eliminated the proposed $22,500 payout over thirty years. Indeed, the temporary alimony is approximately $350 dollars less per month than the spousal support she received prior to the divorce decree.

Additionally, the record will not sustain the finding that the trial court considered Wife's current employment status or the meager income that will

derive from the rental unit she received during equitable distribution. To the contrary, the trial court speculated that Wife was underemployed and suggested that she relocate to a better job market or sell off assets received in equitable distribution in order to satisfy her debts. *See* Second Amended Opinion and Order, 4/30/14, at 18-19. That gratuitous advice by the trial court exceeded what was required under either § 3502 regarding equitable distribution or § 3701 concerning alimony. Thus, in light of the trial court's responsibility to weigh the parties' **current** economic circumstances in fashioning the equitable distribution order, we direct the trial court to revisit its distribution of liquid assets and to devise an alimony award and/or distribution scheme that more clearly realizes economic justice between the parties in relation to their current settings without disturbing the equal division of the marital estate.[8]

Wife's final claim seeks assistance with her portion of the master's costs and her counsel fees. We review a trial court's decision to award costs and fees in a divorce matter under an abuse of discretion standard. *Habjan v. Habjan*, 73 A.3d 630, 642 (Pa.Super. 2013). Instantly, we find that the trial court did not abuse its discretion in making each party responsible for

---

[8] For example, the trial court could either increase the amount and duration of the alimony award or follow the divorce master's lead and fashion an arrangement wherein Husband mortgages his rental property to pay Wife a cash offset against a portion of her share of Husband's pension benefits under the QDRO that the trial court directed the parties to prepare.

one-half of the cost of the masters' proceeding and his or her attorneys' fees. The court's allotment of costs is both reasonable and consistent with 50/50 equitable distribution scheme. Additionally, we observe that, to the extent that the expenditures would be burdensome to Wife under her current economic circumstances, the trial court's alterations will, at a minimum, alleviate her cash flow issues, and may result in a reduction of her responsibility for the marital portion of the student loan debt.

Accordingly, we affirm the trial court's determinations in relation to the omission of the AXA Equitable annuity from the proposed equitable distribution scedule and the trial court's 50/50 apportionment of the marital estate. However, we remand for the trial court to calculate the marital share of Wife's student loan debt, determine whether any portion of the marital amount was used for a joint purpose unrelated to education expenses, and consistent with *Hicks*, *supra*, divide responsibility for that amount according to the 50/50 equitable distribution scheme. In addition, the trial court is directed to devise an equitable distribution order and alimony award that is reflective of the parties' economic realities as they currently exist.

Decree affirmed in part, reversed in part, and remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Olson joins this memorandum.

Judge Strassburger files a concurring statement.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/17/2015</u>