J-A35042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY ELLEN BOROVICK, formerly known as MARY ELLEN WILSON, | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| DONALD REECE WILSON, | : : | |
| Appellee | : | No. 463 WDA 2015 |

Appeal from the Order February 5, 2015
in the Court of Common Pleas of Clarion County,
Civil Division, No. 151 CD 2009

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED JANUARY 27, 2016**

Mary Ellen Borovick (formerly known as Mary Ellen Wilson) (hereinafter "Wife") appeals, *pro se*, from the Order directing her ex-husband, Donald Reece Wilson (hereinafter "Husband"), to pay Wife alimony in the amount of $650 per month for three years.  We affirm.

The trial court set forth the factual and procedural history underlying this appeal in its Opinion and Order dated February 5, 2015 (hereinafter "the Opinion and Order").  **See** Opinion and Order, 2/5/15, at 1-6.[1]  We incorporate the court's recitation herein by reference.  **See id.**

---

[1]  As the trial court mentions, this Court previously vacated the trial court's underlying Order concerning alimony and equitable distribution, and remanded to the trial court to consider the factors enumerated in 23 Pa.C.S.A. § 3701(b)(1)-(17) when determining whether alimony is necessary.  **See Wilson v. Wilson**, 107 A.3d 240 (Pa. Super. 2014) (unpublished memorandum).

By the Order dated February 5, 2015, the trial court directed that Husband shall pay Wife alimony of $650 per month for three years, commencing on May 30, 2013 (*i.e.*, the date of the trial court's underlying Order awarding Wife alimony). Wife timely filed a Notice of Appeal. In response, the trial court ordered Wife to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Wife timely filed a *pro se* Concise Statement, which was 36 pages long and in narrative form. The trial court thereafter issued a Pa.R.A.P. 1925(a) Opinion stating that (1) Wife's voluminous Concise Statement was defective under Rule 1925; and (2) nevertheless, the award of alimony was proper based on the court's rationale in the Opinion and Order.

Initially, we observe that although Wife's appellate brief fails to comply with numerous of our Appellate Rules concerning briefing requirements, **see** Pa.R.A.P. 2111(a)(1)-(10), and fails to contain any citation to legal authority, **see** Pa.R.A.P. 2119, we decline to quash or dismiss her appeal, and will address the merits of her claims. **See Wilkins v. Marsico**, 903 A.2d 1281, 1284-85 (Pa. Super. 2006) (noting that this Court is willing to liberally construe materials filed by a *pro se* litigant).

Though Wife's brief does not contain a statement of questions presented, she essentially raises one allegation of trial court error: Whether the trial court abused its discretion when it determined that Wife was entitled to alimony of $650 per month for only three years. **See** Brief for

Appellant at 1-7. Wife alleges that she has been diagnosed with multiple sclerosis ("MS"), and that because of this malady, she is unable to work, and should be entitled to alimony for her lifetime. *Id.* at 4-5; *see also id.* at 6 (asserting that Wife's "desires are not to be considered 'taken care of' …. She currently lives on the verge of destitution, and is only asking for lifetime support to help her live with health care and to secure the growing needs that her progressing [MS] is demanding.") (capitalization omitted).

"Our standard of review over an alimony award is an abuse of discretion." *Gates v. Gates*, 933 A.2d 102, 106 (Pa. Super. 2007) (citation omitted); *see also Hicks v. Kubit*, 758 A.2d 202, 205 (Pa. Super. 2000) (stating that the scope of review in assessing the propriety of an award of alimony is to determine whether the trial court's order is motivated by prejudice, bias or ill-will, or whether the court has overridden or misapplied the law). This Court has explained that

> the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.
>
> In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income

- 3 -

sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Gates*, 933 A.2d at 106 (citing, *inter alia*, 23 Pa.C.S.A. § 3701(b)) (citations, quotation marks and emphasis omitted).

In its Opinion and Order, the trial court thoroughly addressed Wife's claims and the factors contained in section 3701(b), and determined that Wife is entitled to alimony of $650 per month for three years, as opposed to for her lifetime. *See* Opinion and Order, 2/5/15, at 6-15. The trial court's analysis is supported by the record, and we discern no abuse of discretion in the court's ruling. Accordingly, we affirm based on the trial court's sound analysis concerning Wife's claim on appeal. *See id.*

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2016

- 4 -

IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA

MARY ELLEN WILSON, :
:
**Plaintiff** :
:
v. :
:
DONALD REECE WILSON, :
:
**Defendant** :

CIVIL DIVISION

151 CD 2009

## OPINION AND ORDER OF COURT

Arner, J.                                                    February 5, 2015

### I.    Background

This is a divorce case where Mary Ellen Wilson (Wife) made various claims against Donald Reece Wilson (Husband), including a claim for alimony. I assigned the case to a master, who held a hearing and filed a report and then a supplemental report, recommending alimony of $650 per month for three years. Wife filed Exceptions. I adopted the master's recommendation and Wife appealed my Order. The Superior Court sustained the appeal and remanded the case with instructions to analyze an award of alimony with consideration to all the factors prescribed under Section 3701(b)(1)-(17).

In following the Superior Court's instructions, I must apply the factors prescribed under Section 3701(b)(1)-(17) to the relevant facts. Since this case involves Exceptions to a master's report, the source of the facts is the testimony and exhibits that were presented during the master's hearing held on May 9, 2012. I am not required to hold a hearing to receive any additional evidence.



1

The Superior Court has directed me to conduct my own analysis. This requires me to consider the entire record. Therefore, I have read the master's report and his supplemental report and considered his findings of fact and conclusions of law and the reasons given for his conclusions. I have also read the entire transcript of testimony from the master's hearing and considered the parties' exhibits. Finally, the attorneys for both sides have made arguments on the facts and the law, both orally to me and in their appellate briefs, and I have considered all those arguments. The following is my analysis.

## II.     Facts

The parties were married on August 25, 1990 and separated after 18 years of marriage. Notes of Testimony (NT) at page 22.

The parties stipulated to the following facts. Counsel fees charged to Wife are $11,118.75. Husband's retirement with the Public School Employees Retirement System is $281,154.89, with the marital portion being $258,984.46. The Farmers Bank savings account had a date of separation value of $23,312.85; $1,500 was withdrawn for a master's fee and the balance is $21,857.18. The value of the American Funds mutual funds is $3,956.86. The Fidelity Investment is $8,899.58. Wife was diagnosed with multiple sclerosis (MS) in May 2008. NT at pages 4-8.

At the start of the master's hearing, Wife decided in light of the stipulation to not call a physician to testify. She expressed the thought that a physician would not state an opinion, and would only speculate, on how MS will affect her in the future since everyone is different. The physician would only say if she remains active, her muscles are less likely to atrophy. As a result, Wife limited her evidence on the effects of the MS

2

to only her own testimony on how the MS has affected her up to this point. NT at pages 9-10.

Robert Gourley testified on behalf of Husband that he made a written offer in September 2011 to purchase the parties' residential real estate for $300,000, with an agreement to allow Wife to remain on the property for nominal rent. Wife did not accept the offer. She does not want to leave the farm. He is still interested, but he has reduced his offer to $250,000. NT at page 13-20, 90 and 109.

Wife testified she suffers from MS and cannot work at any job. In April 2008, she started feeling a shocking sensation in her body. She was having problems with equilibrium. She experienced "exacerbations" and was admitted to the hospital for about a week because she could not walk. They treated her with steroids. Since then, her complaints have remained the same each time she sees her doctor. She had what she called a "club leg" and one time she tripped and fell in the hall at school for no apparent reason. NT at pages 25 – 30.

Earlier on, Wife used to fall a lot, but now she uses a cane if she is doing considerable walking or standing. She has to take a wheelchair when she goes places like school shopping because she cannot make it through walking an entire day. She tries to keep moving and does not fall as much now because she concentrates with each step. She has fallen many times in the past year, but with no injuries. Fatigue is her biggest problem. She can start a task and as time goes on, fatigue with her muscles sets in. NT at pages 25-32.

Wife graduated from Clarion University in 1982 with an Education degree. She started teaching at St. Joseph's School in 1984 and taught 5th and 6th grades there for

3

14 years. She also was a substitute teacher in the Union School District and at the Immaculate Conception School. NT at pages 32-34.

The parties' son was born in November 1997 and they agreed Wife would stay home to help raise him. In about 2002, she returned to work as a substitute teacher at IC and Clarion Area Schools. Since then, she has not obtained full-time employment as a teacher. She has not been able to work full-time because of the day to day challenges with her MS. NT at pages 35-40.

In 2008, when Wife was diagnosed with MS, she stayed on the substitute teacher lists. She was not working day to day. She was not able to work full-time because she could not sit or stand for great lengths of time. That is why substitute teaching was something she did because if she needed to sit, she could sit. She is not able to work full-time because she is afraid to commit to someone and then find out after pushing herself that she was not able to do it, because she knows what happens in her daily living. She experiences fatigue in her muscles. There is no reason to believe her condition will improve. Wife wants alimony for life. NT at pages 41-45.

Wife wants all of her Fidelity Investment retirement account in equitable distribution. She wants one half of the savings account and the mutual fund. She wants the entire residence property and agrees Husband can keep his entire pension. NT at pages 52-56.

The parties' sons are ages 16 and 14. NT at page 57. Husband pays Wife child support and spousal support of $1,704.15 per month. NT at page 65.

Wife does not take medication for her MS. She has never applied for disability. Since the time of the parties' separation, Wife inquired about employment and she was

4

on the substitute teacher list at Clarion Area and Redbank Schools. When no one was calling her, she got on the substitution list at Union School District. NT at pages 72-73.

In 2010, Wife worked as a part-time aide in the kindergarten room at Union School District, working with two small girls with disabilities, five hours per day three days per week. She had no problem working alternating days, but working back to back days was difficult for her. She had "some problems getting up and down and up and down" and the children required bathroom assistance. After 2010, she was unable to commit to working as an aide. Since then she has been just substituting, but has not been getting any calls. She has inquired about other jobs, but everything seems to be more physical than she can commit to. She does not know about any other education or training she could get. NT at pages 74-76 and 87. Wife has no income. NT at page 79.

Wife's prior income was $11,692 in 1997 when she last taught at St. Joseph's. Clarion Area paid substitute teachers $80 per day before taxes, Redbank paid $85 and IC paid $60. As an aide at Union, she was paid $8 per hour. If she sat in for a secretary, she made more. She worked in the cafeteria and enjoyed it, but it was too hard because it was non-stop work. NT at page 95.

Turning to Husband's evidence, he testified that he owns a house and pays his mortgage of $430 per month, real estate taxes of $1,700 per year, and insurance of $300 per year. His monthly utilities are electric bill - $30, gas - $40, and water and sewer - $50. NT at pages 98-99.

Husband is 45 years old. He is a member of the faculty in the Education Department at University of Pittsburgh, Bradford. His salary is about $51,000 or

$52,000 plus per year. He pays $1,700 per month in support; $650 is spousal support and the rest is child support. He has been paying spousal support since March 2009. When he and Wife were together, they lived frugally and had no debt. NT at page 99-103 and 157 and 175.

Husband cannot withdraw money from his pension until he retires, he thinks at age 63. He cannot take out loans against the pension. He pays $340 per month for health insurance for the children, in addition to child support. The support and insurance payments amount to about one half his take home pay. NT at pages 121-125.

Husband did not know before he left in December that Wife has MS. There had been no definite diagnosis. Wife says she told him. Husband believes she cannot maintain the house and it is unreasonable not to sell it. There are jobs available to her. NT at pages 131-133 and 178.

### III.  Analysis

### A. Factor 1

The first factor set forth in Section 3701(b)(1) is "[T]he relative earnings and earning capacities of the parties."

Wife has no income from employment. Husband makes about $52,000 per year. Wife claims she has no earning capacity as a result of physical disabilities caused by MS.

With regard to earning capacity, Wife is not asserting that Husband's earning capacity is greater than his actual earnings and so Husband's earning capacity is not at

6

issue. However, Husband disputes Wife's claim that she cannot work and therefore, Wife's earning capacity is at issue; in fact, it is the key issue in this case.

Wife has many years of experience working as a teacher and aide in private and public schools, both on a full-time and part-time basis. Wife claims her MS prevents her from performing any such jobs, but she provided minimal evidence to the master on the physical demands of those types of jobs. There is not enough evidence indicating that Wife's physical limitations prevent her from performing such jobs.

The evidence on the physical requirements of teaching and aide jobs consists of Wife's testimony about her work as an aide in 2010, when she worked five hours per day three days per week as a kindergarten aide for two girls. She simply stated she had difficulty working back to back days and she had "some problems getting up and down and up and down" and assisting the children with the bathroom.

Contrary to Wife's assertions that she cannot perform any jobs, there is evidence showing she can work and she believes she can work. In 2010, two years after she was diagnosed with MS, Wife worked for a full school year as a part-time aide. There is no evidence indicating that she missed any work because of her MS. There is no evidence Wife's condition has worsened since she was diagnosed in 2008 or since she last worked in 2010. In fact, the evidence shows the limitations she experienced in 2010, with occasional shocking sensations, weakness, problems with balance, and difficulty standing and sitting for long periods, are the same limitations she was experiencing at the time of the master's hearing.

In addition, there is evidence showing Wife believes she can perform teaching and aide jobs and she is willing to do so. She testified that since the time of the parties'

7

separation, she has inquired about employment and has kept her name on the substitute teacher lists at Clarion Area and Redbank Schools. When no one was calling her from those schools, she got on the substitution list at Union School District.

Wife provided no explanation why the Schools have not been calling her for substitute teaching and aide jobs. There is no evidence the Schools have refrained from offering jobs because of her MS. In any case, the fact that Wife has kept her name on the lists is proof that she believes she is physically able to work full school days and even multiple consecutive days.

Further, it appears Wife believes, as she stated at the beginning of the master's hearing, that her treating physicians cannot tell her what the future holds and they would only say she should remain active to make it less likely her muscles will atrophy. There is no evidence that a physician has told Wife not to work or imposed any restrictions on work. To the contrary, a doctor has apparently told Wife that staying active will be beneficial in that it is less likely her muscles will atrophy. It can therefore be inferred that physical activity from work as a teacher or an aide would be beneficial.

For these reasons, I find that at the time of the master's hearing Wife did have an earning capacity as a substitute teacher and a teacher's aide. There is minimal evidence on how much Wife can earn. She stated substitute teachers earn from $60 to $85 per day and she thinks she earned $8 per hour working as an aide. It is impossible to determine from this limited information how much Wife can reasonably earn per year. Nevertheless, it is clear that her earning capacity is less than Husband's.

8

## B. Factor 2

The second factor set forth in Section 3701(b)(2) is "[T]he ages and the physical, mental and emotional conditions of the parties."

There was no testimony on Wife's age at the master's hearing. Husband stated he was 45 years old at the time. Presumably, Wife is close in age to Husband.

I addressed Wife's physical condition in my analysis with respect to the first statutory factor. There are no issues regarding Husband's physical condition or regarding the mental and emotional conditions of the parties.

## C. Factor 3

The third factor set forth in Section 3701(b)(3) is "[T]he sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits."

The evidence shows Wife was earning no income from employment. However, she does receive spousal support from Husband of $650 per month. Husband provided Wife with health insurance benefits which cost him $340 per month for Wife and the children. Otherwise, Wife received no income from medical, retirement, insurance or other benefits. There is no evidence of the receipt of other income from rent, investments or other sources.

Husband is a member of the faculty in the Education Department at University of Pittsburgh, Bradford. His salary is about $51,000 or $52,000 plus per year. There is no evidence of his receipt of income from medical, retirement, insurance or other benefits or from rent, investments or other sources. He cannot start receiving pension benefits until he retires.

9

## D. Factor 4

The fourth factor set forth in Section 3701(b)(4) is "[T]he expectancies and inheritances of the parties."

Neither party has any expectancies or inheritances.

## E. Factor 5

The fifth factor set forth in Section 3701(b)(5) is "[T]he duration of the marriage."

The parties were married on August 25, 1990. Wife alleges in paragraph 7 of her Complaint that the parties separated on December 28, 2008. The parties were divorced by Decree of this court dated October 18, 2013.

## F. Factor 6

The sixth factor set forth in Section 3701(b)(6) is "[T]he contribution by one party to the education, training or increased earning power of the other party."

Wife obtained her college degree in 1982 before the parties were married. Husband obtained an advanced degree after the parties were married, but it was financed through grants and the parties did not incur loans. There is no evidence of the payment of out of pocket expenses. Wife is not claiming that she should receive credit for supporting Husband in some manner while he was going to school.

## G. Factor 7

The seventh factor set forth in Section 3701(b)(7) is "[T]he extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child."

10

At the time of the Master's hearing the parties' two sons were 16 (DOB 12/7/95) and 14 years of age (DOB 12/4/97). Wife was a stay at home mother until five years after the younger son was born. The earning power, expenses and financial obligations of the parties will not be affected by reason of serving as the custodian of a minor child.

## H. Factor 8

The eighth factor set forth in Section 3701(b)(8) is "The standard of living of the parties established during the marriage."

The parties lived a middle class lifestyle and within their financial means during the marriage. They had no debt at the time of separation.

## I. Factor 9

The ninth factor set forth in Section 3701(b)(9) is "[T]he relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment."

Wife has an undergraduate Education degree and Husband has a doctorate from the University of Pittsburgh. Wife has essentially been unemployed since 2010. There is no evidence that she needs additional education or training to enable her to find appropriate employment. However, due to the significant lapse of time during which Wife has been unemployed, she should be afforded an opportunity to obtain additional training and experience to permit her to find appropriate employment on the regular basis. Further, due to her physical limitations from MS, she should have an opportunity to obtain and follow the advice of her physicians and possibly the services of physical therapists to help her be better able to perform her job. The three year time frame recommended by the master in his supplemental report is certainly enough time for Wife

11

to acquire sufficient education or training or therapy to enable her to find appropriate employment.

### J. Factor 10

The tenth factor set forth in Section 3701(b)(10) is "The relative assets and liabilities of the parties."

Counsel fees charged to Wife are $11,118.75. Husband's retirement with the Public School Employees Retirement System is $281,154.89, with the marital portion being $258,984.46. The Farmers Bank savings account had a date of separation value of $23,312.85; $1,500 was withdrawn for a master's fee and the balance is $21,857.18. The value of the American Funds mutual funds is $3,956.86. The Fidelity Investment is $8,899.58.

Robert Gourley made a written offer in September 2011 to purchase the parties' residential real estate for $300,000, with an agreement to allow Wife to remain on the property for nominal rent. Wife did not accept the offer. She does not want to leave the farm. He is still interested, but he has reduced his offer to $250,000.

The master recommended an equitable distribution 55% of the assets to Wife and 45% to Husband and the distribution of the specific assets is set forth in the Order of this court dated July 24, 2012.

### K. Factor 11

The eleventh factor set forth in Section 3701(b)(11) is "[T]he property brought to the marriage by either party."

Neither party brought property into the marriage although after the parties were married, Wife received $25,000 as an inheritance from her mother's estate. She used

12

$4,000 of it as a down payment on a truck and the rest as a down payment on the parties' residential real estate.

## L. Factor 12

The twelfth factor set forth in Section 3701(b)(12) is "[T]he contribution of a spouse as homemaker."

Wife stayed at home to help raise the parties' children from 1995 until 2002. Otherwise, it appears both parties contributed equally to the maintenance of the household and the property.

## M. Factor 13

The thirteenth factor set forth in Section 3701(b)(13) is "[T]he relative needs of the parties."

At the time of the master's hearing, Wife had not been working for two years and she was depending on spousal support of $650 per month to pay her bills and to maintain her farm. She is not seeking an increase in that amount and therefore, it appears $650 per month is sufficient to meet her needs. Husband pays about one half of his income in spousal and child support and health insurance, but apparently he has enough money remaining to support himself.

## N. Factor 14

The fourteenth factor set forth in Section 3701(b)(14) is "[T]he marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one

13

party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions)."

Neither party is raising a claim that alimony should be paid or not paid because of marital misconduct or abuse.

## O. Factor 15

The fifteenth factor set forth in Section 3701(b)(15) is "[T]he Federal, State and local tax ramifications of the alimony award."

There is no evidence concerning the tax ramifications of an alimony award.

## P. Factor 16

The sixteenth factor set forth in Section 3701(b)(16) is "[W]hether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs."

Neither party lacks sufficient property to provide for her or his reasonable needs. In fact, Wife will receive 55% of the value of the marital assets, including the entire farm and residence having a value of at least $250,000 and percentage shares of The Farmers Bank savings account of $21,857.18, the American Funds mutual funds of $3,956.86 and the Fidelity Investment of $8,899.58. Wife would be in a better position to meet her needs if she would sell the farm, thereby reducing her expenses, and invest part of the proceeds in income generating assets, but she refuses to sell the farm.

## Q. Factor 17

The seventeenth factor set forth in Section 3701(b)(17) is "[W]hether the party seeking alimony is incapable of self-support through appropriate employment."

14

As I stated with regard to factor number 13, Wife is not seeking an increase in the amount she has been receiving as spousal support and therefore, $650 per month is sufficient to meet her needs. For reasons I stated in my analysis of the first and ninth factors, I find that Wife is capable of self-support through appropriate employment and she can certainly be ready to commence such employment within three years.

## IV.    Conclusion

Wife is awarded alimony of $650 per month for three years. In the Order of May 30, 2013, I stated in paragraph 4A that the three years period would commence on October 15, 2012, the date of the supplemental master's report. Wife argued in her appeal to the Superior Court that the start date should be the date of divorce, but the Court found she had not properly raised that claim in her appeal.

Nevertheless, Section 3701(c) of the statute requires me to determine the duration of the order for a time which is reasonable under the circumstances. Since Wife did not have notice by way of a court order setting the amount and period of alimony until she received my Order on May 30, 2013, it is reasonable that alimony should start on that date. As of May 30, 2013, she knew she should make the necessary preparations and arrangements to receive alimony for just three more years. She would not be justified in making no preparations pending the outcome of her appeal. Therefore, it is reasonable for the three year term of the alimony to commence on May 30, 2013 and not on October 15, 2012, as previously ordered.

Hence, the following Order:

15

# IN THE COURT OF COMMON PLEAS
## OF CLARION COUNTY, PENNSYLVANIA

MARY ELLEN WILSON,      :

     Plaintiff      :

       v.      :

DONALD REECE WILSON,      :

     Defendant      :

**CIVIL DIVISION**

**151 CD 2009**

## ORDER OF COURT

**AND NOW**, February 5, 2015, it is hereby ORDERED that the Defendant shall pay the Plaintiff alimony at the rate of $650 per month for three years from May 30, 2013 until May 30, 2016. The Defendant shall receive credit for any and all spousal support payments of $650 per month that he has made during that period.

**BY THE COURT:**

*James G. Arner*

JAMES G. ARNER, P.J.

2-6-2015
Opinion + order
J. Troese Esq
L. Lerch Esq
J. Ryan (master)

16