J-A06025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASON BALEGA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIA BALEGA | : | |
| | : | |
| Appellant | : | No. 858 WDA 2020 |

Appeal from the Order Entered July 16, 2020
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  1147 OF 2013 D

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED: SEPTEMBER 10, 2021**

Maria Balega ("Wife") appeals from the order, entered in the Court of Common Pleas of Westmoreland County, denying her exceptions to the recommendations of the hearing master and adopting those recommendations in ordering equitable distribution.  After our review, we affirm.

Jason Balega ("Husband") and Wife were married on June 8, 1996, and separated on October 9, 2012.[1]  The marriage was Husband's first and Wife's second.  The marriage produced one daughter, who is now an adult.  Husband filed a complaint in divorce on May 31, 2013, in which he sought equitable distribution of the marital estate.  Following discovery, the trial court appointed J. Douglas Farrell, Esquire, as master, to conduct a hearing and submit a report and recommendation to the court.

_____

[1] Husband testified that the parties separated on July 14, 2012.  Wife testified, and the master found, that the date of separation was October 9, 2012.

At the time of the master's hearing, on December 10, 2019, Husband was 46 years old and in good health. Husband is a high school graduate and earned an associate's degree from the Art Institute of Pittsburgh. He testified that he was employed full-time as a heavy equipment operator, and that he worked 40 hours per week and earned $28/hour, with an opportunity for overtime. Prior to separation, Husband earned between $60-80,000 per year; in the years 2016-2018, Husband earned in excess of $100,000. Husband lives with his father and has no living expenses other than a car payment. At the time of the hearing, Husband was providing medical insurance for Wife and their daughter.

Wife was 50 years old and unemployed at the time of the master's hearing. She is a high school graduate and has an associate's degree in business. Wife declined to discuss her health, although she asserted that she is disabled and unable to work. During the course of these proceedings, Wife was represented by six different attorneys, all of whom eventually withdrew their appearances. Despite the master urging Wife to retain counsel, she appeared at the master's hearing *pro se*.

The parties agree that the marital estate consists of: the marital residence at 216 East Garden Road, Brentwood, which is titled in the names of Husband and Wife and encumbered by a mortgage in Wife's name in the approximate amount of $45,000; Husband's Operating Engineers Local 66 Annuity and Savings Plan; Husband's Operating Engineers Construction Industry and Miscellaneous Pension Fund; two vehicles that were traded post-

separation; Wife's Roth IRA; and a 529 educational account for the benefit of the parties' daughter.

Following the hearing, the master submitted his Findings of Fact, Conclusions of Law and Recommendation on February 26, 2020. The master awarded the marital residence, valued at $96,000, as well as the entire balance of Husband's Operating Engineers Annuity and Savings Plan as of November 12, 2019, valued at $54,682, less the sum of $12,000,[2] to Wife. Wife also received 50% of the marital portion of Husband's Operating Engineers pension. Neither party was awarded alimony.

On March 17, 2020, Wife filed *pro se* exceptions to the report of the master. On July 16, 2020, after reviewing the briefs submitted by the parties, the trial court issued an order denying Wife's exceptions and adopting the recommendations of the master. On September 8, 2020, the trial court entered a Final Decree in Divorce. Wife filed a timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Wife raises the following claims for our review:

1. D[id] the trial court abuse its discretion[ by utilizing] the incorrect value for the marital residence, thereby rendering an equitable distribution award that is unsupported by record evidence?

---

[2] The master awarded $12,000 to Husband for the purpose of paying for the college tuition of the parties' daughter, as mutually agreed upon by the parties.

2. D[id] the trial court abuse its discretion[ by failing] to award alimony to a litigant who clearly demonstrated a need and qualification for alimony, thereby violating 23 Pa.C.S.[A.] § 3701(a)-(b)?

3. D[id] the trial court abuse its discretion[ by failing] to award a disabled spouse a skewed portion of the marital estate after the opposing spouse caused the disability, thereby violating 23 Pa.C.S.[A.] § 3502?

Brief of Appellant, at 8.

Wife first alleges that the trial court erred in utilizing the incorrect value for the marital residence, "thereby rendering an equitable distribution award that is unsupported by record evidence." Brief of Appellant, at 8. This claim is waived.

Pursuant to Pa.R.A.P. 302(a), "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). *See Cook v. Cook*, 186 A.3d 1015, 1024–25 (Pa. Super. 2018) (holding issue waived in equitable distribution matter where wife failed to raise issue before lower court in exceptions to master's report). Likewise, Pa.R.C.P. 1920.55-2(b) addresses exceptions to master's reports and provides that "[e]ach exception shall set forth a separate objection precisely and without discussion. *Matters not covered by exceptions are deemed waived* unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." Pa.R.C.P. 1920.55-2(b) (emphasis added). *See Nagle v. Nagle*, 799 A.2d 812, 821 (Pa. Super. 2002) (finding issue waived because it was not included in exceptions to master's report); *Schuback v. Schuback*, 603 A.2d 194, 197 (Pa. Super. 1992) (same).

Here, our review of the record reflects that Wife failed to raise the issue of the master's valuation of the marital residence in her exceptions to the trial court. Accordingly, she has waived this claim.[3]

Wife next asserts that the trial court erred by failing to award her alimony, in violation of 23 Pa.C.S.A. § 3701(a)-(b), where she "clearly demonstrated a need and qualification for alimony." Brief of Appellant, at 8. Wife alleges that the court did not consider all of the statutory factors, most of which she argues weigh in favor of an award of alimony. She is entitled to no relief.

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the

___

[3] Even if the claim were not waived, we would find it meritless. Here, the only evidence presented at the master's hearing regarding the valuation of the marital residence was Husband's testimony that a nearly identical neighboring property sold for $96,000 approximately six months to a year before the date of the parties' separation. *See* N.T. Master's Hearing, 12/10/19, at 15. While a more precise estimation of value in the form of an appraisal would certainly have been preferable, Wife presented no evidence whatsoever regarding the residence's value. "Where the evidence offered by one party is uncontradicted, the court may adopt this value even [though] the resulting valuation would have been different if more accurate and complete evidence had been presented." *Biese v. Biese*, 979 A.2d 892, 897 (Pa. Super. 2009). "A trial court does not abuse its discretion in adopting the only valuation submitted by the parties." *Id.* Because Husband's testimony regarding the recent sale of a comparable property was the only record evidence of the value of the marital residence, the trial court did not err in adopting the master's valuation. *See id.*

lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, ***alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill***.

***Teodorski v. Teodorski***, 857 A.2d 194, 200 (Pa. Super. 2004) (emphasis added).

Section 3701(b) of the Divorce Code states:

In determining whether alimony is necessary and in determining the nature, amount, duration[,] and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, menta[,]l and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance[,] or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training[,] or increased earning power of the other party.

(7) The extent to which the earning power, expenses[,] or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State[,] and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b). "To determine whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider all relevant factors, including the [seventeen] factors that are expressly mandated by statute." ***Lawson v. Lawson***, 940 A.2d 444, 447 (Pa. Super. 2007). It is the burden of the party seeking alimony to prove his or her entitlement to support. ***Hicks v. Kubit***, 758 A.2d 202, 205 (Pa. Super. 2000).

Here, the trial court adopted, in full, the master's recommendation as to alimony. "A master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of

credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Childress v. Bogosian***, 12 A.3d 448, 455-56 (Pa. Super. 2011).

The master, after setting forth the section 3701(b) factors, concluded as follows:

> The [m]aster finds that the [] equitable distribution award [] to [Wife] is sufficient to meet [her] needs[, as] she will receive a disproportionate share of a limited marital estate[,] including the marital residence[,] where she has resided [since] the date of separation.
>
> The case law is clear that alimony is not generally used as a tool to punish [a] party[,] whether the party is the payor or payee of the alimony. In this particular case, [Husband] has paid support to [Wife] in one way or another from 2012 through 2020[, which] results [in] payment of support . . . of 8 years [following] a 16[-] year marriage. ***It should be further noted that [Wife] did not produce a budget, nor did [she] submit any medical evidence and/or reports referencing that she could not work*** and[,] therefore[, Wife] did not prove that she had a credible need for alimony. Although [Wife] is not currently working, the [m]aster believes the . . . disproportionate award of the marital estate justifies the current support order being terminated as of the date of the divorce decree[, as Wife] will have funds available to her as a result of the disproportionate equitable distribution scheme set forth herein[, in which Wife is] awarded [Husband's] annuity retirement account[,] less $12,000.00, and 50% of the marital portion of [Husband's] pension when the pension [enters] payout status[,] along with any equity that remains in the marital residence.

Master's Report, 2/26/20, at 18-19 (emphasis added). The master further noted that: neither party had any expectation of inheritances, ***see id.*** at 4-5; neither party contributed substantially to the education or training of the

other,[4] *see id.* at 4-6; and both parties earned high school diplomas and associate's degrees. *See id.* at 4-5.

In light of the fact that Wife produced no evidence whatsoever regarding her financial needs or alleged inability to work,[5] we can discern no error in the trial court's adoption of the master's recommendation. While Wife claims she "clearly demonstrated" her need for alimony, there simply exists no evidentiary foundation upon which to base such an award. As the master noted, Wife—who appeared at the master's hearing *pro se*—presented no evidence as to either her need for support or her stated inability to work. Despite the master's repeated exhortations to Wife that she retain new counsel, Wife opted to proceed *pro se*.[6] "When a party chooses to represent herself, as here, she cannot impose on the necessarily impartial court or master the responsibility to act as the party's counsel and direct her repeatedly how to proceed or to proceed for her. When a party decides to act

---

[4] The master noted that, for a period of approximately six months, Wife worked while Husband participated in an apprentice program. Husband testified that, during that period, he earned $12.50 per hour. *See* N.T. Master's Hearing, 12/10/19, at 90.

[5] We note that Wife conceded that, at one point during the parties' separation, she had a job, from which she was terminated. *See* N.T. Master's Hearing, 12/10/19, at 119. Wife testified that she was determined to be disabled by the Social Security Administration; however, she presented no evidence to that effect, nor did she testify as to the nature of her disability. *See id.*

[6] Although Wife asserted prior to the master's hearing that she was unable to afford legal representation, *see* N.T. Master's Hearing, 12/10/19, at 7, she is nonetheless represented by counsel on appeal.

on her own behalf, she assumes the risk of her own lack of professional, legal training." *Savage v. Savage*, 736 A.2d 633, 647–48 (Pa. Super. 1999)

Here, the master considered the statutory factors in light of the evidence before him and concluded that Wife had failed to demonstrate a need for alimony, particularly in light of her disproportionate share of the marital estate. Based upon the record as it exists, we can discern no abuse of discretion on the part of the trial court in adopting that recommendation and declining to award alimony to Wife. *Hicks*, *supra* (burden falls on party seeking alimony to prove entitlement to support).

Finally, Wife claims that the trial court abused its discretion by failing to award her a "skewed portion" of the marital estate because she suffers from disabilities "caused by [Husband]." Brief of Appellant, at 27. She asserts that the court's award "is volatile [sic] of statutory authority and dismissive of record evidence." *Id.* Wife is entitled to no relief.

> A trial court has broad discretion when fashioning an award of equitable distribution. In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S.[A.] § 3502(a). However, there is no standard formula guiding the division of marital property and the method of distribution derives from the facts of the individual case. While the list of factors in [s]ection 3502 serves as a guideline for consideration, the list is neither exhaustive nor specific as to the weight to be given the various factors. Accordingly, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Hess v. Hess*, 212 A.3d 520, 523–24 (Pa. Super. 2019) (internal citations and quotation marks omitted).

Section 3502(a) provides:

(a) General rule.--Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors.  The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets.  Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities[,] and needs of each of the parties.

(4) The contribution by one party to the education, training[,] or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance[,] or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation[,] or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State[,] and local tax ramifications associated with each asset to be divided, distributed[,] or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer[,] or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

(b) Lien.--The court may impose a lien or charge upon property of a party as security for the payment of alimony or any other award for the other party.

(c) Family home.--The court may award, during the pendency of the action or otherwise, to one or both of the parties the right to reside in the marital residence.

(d) Life insurance.--The court may direct the continued maintenance and beneficiary designations of existing policies insuring the life or health of either party which were originally purchased during the marriage and owned by or within the effective control of either party. Where it is necessary to protect the interests of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party.

23 Pa.C.S.A. § 3502(a).

Contrary to her claim on appeal, Wife was, in fact, awarded the lion's share of the modest marital estate. Specifically, Wife received the majority of the three primary marital assets—the marital home, Husband's union annuity plan valued at more than $54,000 at the time of the hearing (minus $12,000 to be put towards daughter's education), and half of the marital portion of Husband's union pension plan. Moreover, Wife's argument that she is in some way disabled and unable to work is not supported in the record.[7]

---

[7] Wife's statement of this issue baldly alleges that her alleged disability was caused by Husband. However, there is no record evidence to support that claim and the body of her brief enlightens us no further. This Court views with extreme disfavor Wife's inclusion in her brief of such a scurrilous allegation—

As discussed above, Wife presented no evidence as to the extent or nature of her purported disability, refusing to even discuss it at the master's hearing. ***See*** N.T. Master's Hearing, 12/10/19, at 105 ("Q:  And how is your health?  A:  How do I answer that?  I have medical documents that I turned in.  I really don't think—discussing it is difficult for me.  My health is—I don't know what to say.  Q:  You don't know what to say?  A:  No, because the thing is I have diagnoses that are difficult to discuss[,] which is why Judge Mears had me evaluated by Dr. Bush.").

In sum, the master addressed the section 3502 factors and, despite the dearth of evidence presented by Wife at the hearing, nevertheless awarded her the bulk of the marital estate.  Accordingly, we can discern no abuse of discretion on the part of the trial court in adopting the master's recommendation in entering its order distributing the marital estate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/10/2021

---

which is tantamount to an accusation of abuse—where it is wholly unsupported in the record.