**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINA MASCIERE WALLACE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHN E. WALLACE | : | |
| | : | |
| Appellant | : | No. 1774 MDA 2016 |

Appeal from the Decree September 29, 2016
In the Court of Common Pleas of Union County
Civil Division at No(s): 13-299

BEFORE: BENDER, P.J.E., OTT, J. and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.: **FILED OCTOBER 12, 2017**

John E. Wallace ("Husband") appeals, *pro se*, from the decree in divorce entered on September 29, 2016, in the Union County Court of Common Pleas, related to the dissolution of his marriage to Christina Masciere Wallace ("Wife"). The trial court entered the decree by consent after granting in part and denying in part Husband's exceptions to the report and recommendation of a master determining Wife's claims of alimony and equitable distribution. Husband raises three issues on appeal: (1) the trial court abused its discretion in awarding Wife alimony; (2) the trial court abused its discretion and applied an incorrect standard of review in its equitable distribution award with regard to marital debt and the valuation of the marital residence; and (3) the trial

_____

[*] Retired Senior Judge assigned to the Superior Court.

court erred when it sustained Wife's objection to hearsay testimony by Husband's expert real estate appraiser. For the reasons below, we affirm.

The relevant facts and procedural history underlying this appeal are as follows. The parties were married in Italy on March 5, 1995. After living in Louisiana and Ohio for several years, they relocated to Lewisburg, Pennsylvania in 2003. Husband and Wife have two children, a son born in 1998 and a daughter born in 2000. Both children live with Wife in Lewisburg in the parties' former marital residence at 320 Lamplight Lane.

Both parties are employed. Husband has been a staff attorney for the Pennsylvania Bureau of Prisons since the parties' move to Lewisburg in 2003. In November of 2012, he accepted a transfer to the Philadelphia office, which resulted in a pay increase.[1] The parties disagree whether this move was a joint decision, or Husband's alone. Nevertheless, Husband has since transferred back to Lewisburg. Wife is the associate director of university marketing for Bucknell University, a position she has held since approximately 2007. Prior to that, Wife stayed home to raise the parties' children.

Wife filed a complaint in divorce on May 14, 2013. In addition to the dissolution of the marriage, Wife sought equitable distribution and alimony.

_____

[1] We note Husband suffers from bipolar disorder. In 2010, he experienced a psychotic break and was hospitalized for more than a week. Thereafter, he was unemployed for 14 months because, as a result of his involuntary commitment, he was ineligible to carry a firearm, which was a requirement of his position with the Board of Prisons. He subsequently received a court order permitting him to carry a firearm, and was re-employed by the Board of Prisons in February of 2012. *See* N.T., 11/10/2015, at 72, 121-122.

On March 5, 2015, Wife moved for the appointment of a master. Mary Leshinskie, Esq., was appointed as Master in June of 2015, and conducted a hearing on November 10, 2015. Thereafter, on December 16, 2015, the Master filed a Report and Recommendation, which provided the following distribution scheme: Wife would receive 62% of the marital estate and Husband would recieve 38% of the marital estate, exclusive of Husband's federal employment retirement plan ("FERS"); Husband's FERS would be divided equally, each receiving 50%; Husband would receive from Wife $6,172.50 for the fair market rental value of the marital home; and Husband would pay Wife alimony of $425.00 per month for a period of 54 months.

Husband filed timely Exceptions to the Master's Report. On March 14, 2016, the trial court heard oral argument on the exceptions, and on May 11, 2016, filed an opinion, granting in part and denying in part Husband's exceptions. In sum, the court denied all of Husband's 58 exceptions, save one; the court agreed Husband was entitled to a larger payment from Wife for the fair market rental value of the marital home. Husband filed an appeal from the court's order.

On September 8, 2016, this Court entered a *per curiam* order quashing the appeal as interlocutory, as no divorce decree had been entered.[2] ***See***

---

[2] "This Court has made it clear that '[u]nless and until a valid decree in divorce has been entered, there can be no equitable distribution of marital property.'" ***Wilson v. Wilson***, 828 A.2d 376, 377 (Pa. Super. 2003) (quotation omitted). Accordingly, "a pre-divorce decree distributing marital property is

Order, 9/8/2016, **Wallace v. Wallace**, 938 MDA 2016 (Pa. Super. 2016).

Thereafter, on September 29, 2016, a divorce decree was entered by consent

of the parties, and this timely appeal followed.[3]

In his first issue, Husband contends the trial court abused its discretion

in awarding Wife alimony. **See** Husband's Brief at 8-11.

When considering the propriety of an alimony award, we will reverse a

trial court's ruling only if "there is an apparent abuse of discretion or there is

insufficient evidence to support the award." **Balicki v. Balicki**, 4 A.3d 654,

659 (Pa. Super. 2010) (citation omitted).

> We previously have explained that the purpose of alimony
> is not to reward one party and to punish the other, but rather to
> ensure that the reasonable needs of the person who is unable to
> support himself or herself through appropriate employment, are
> met. Alimony is based upon reasonable needs in accordance with
> the lifestyle and standard of living established by the parties
> during the marriage, as well as the payor's ability to pay.
> Moreover, alimony following a divorce is a secondary remedy and
> is available only where economic justice and the reasonable needs
> of the parties cannot be achieved by way of an equitable
> distribution award and development of an appropriate employable
> skill.
>
> In determining whether alimony is necessary, and in
> determining the nature, amount, duration and manner of payment
> of alimony, the court must consider numerous factors including
> the parties' earnings and earning capacities, income sources,
> mental and physical conditions, contributions to the earning power

_____

interlocutory" and not reviewable "until it has been rendered final by the entry
of a decree in divorce." **Id.** at 378.

[3] Husband complied with the trial court's directive to file a concise statement
of errors complained of on appeal.

- 4 -

of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Leicht v. Leicht*, 164 A.3d 1246, 1248 (Pa. Super. 2017), *quoting* *Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (internal citations, quotations and original emphasis omitted). *See also* 23 Pa.C.S. § 3701(b) (listing relevant factors trial court should consider in determining whether to award alimony).

Furthermore, when the trial court's review follows a master's hearing, and "where the issue is one of credibility and the Master is the one who heard the testimony and observed the demeanor of the witnesses the reviewing court must give his findings regarding credibility the fullest consideration." *Rollman v. Rollman*, 421 A.2d 755, 758 (Pa. Super. 1980) (citation omitted). Nonetheless, the court is "not bound by the Master's recommendations." *Tagnani v. Tagnani*, 654 A.2d 1136, 1138 (Pa. Super. 1995).

Here, Husband argues the trial court abused its discretion when it confirmed the Master's award of alimony to Wife. Husband's Brief at 9. He states that Wife has a secure, well-paying job, with a retirement plan and benefits, and that she was awarded a larger proportionate share of the marital estate, a fact he insists the Master failed to consider. *See id.* at 9-10. Further, Husband emphasizes Wife's testimony that she deposited the entire $300.00/month alimony *pendente lite* she was receiving into the children's college fund accounts, supporting his assertion that Wife did not need alimony,

but would use it for discretionary matters. Accordingly, he claims the "award is disproportionate, it is based upon a misunderstanding of the causality between equitable distribution and alimony, and it is belied by [Wife's] testimony regarding her need for alimony." *Id.* at 10.

In its opinion disposing of Father's exceptions to the Master's report, the trial court addressed the Master's award of alimony as follows:

> The Court finds alimony in the amount and duration awarded by the Master is appropriate. Further and in conjunction, the Court will not disturb the Master's well-reasoned findings concerning the parties' relative incomes and expenses. Wife testified to her need for alimony. Wife testified that she had not taken on any additional expenses since separation. As opposed to Husband, who gifted a vehicle to [his] sister, purchased a new vehicle, moved to accommodate a lesser paying job, and made trips to Belize post separation. Wife testified that her monthly expenses were not being met even with the Husband's alimony pendente lite and child support contribution. Wife testified that she covered the deficit through the use of credit cards and her tax return. The Master found Wife's testimony to be credible. The Master fully explained her award of alimony in light of the parties['] overall equitable distribution. **See** Master's Report, page 16-17. This Court will not disturb the Master's Recommendation as to alimony nor her findings as to the parties' incomes.

Trial Court Opinion, 5/11/2016, at 2-3.

Our review reveals no abuse of discretion on the part of the trial court. In her report, the Master reviewed the factors delineated in Section 3701(b), before recommending Wife receive alimony from Husband for a period of 54 months. Moreover, contrary to Husband's claim, the Master did consider the fact that, pursuant to her recommendation, Wife would receive a larger share of the marital estate. The Master explained:

The proposed plan of distribution does award to [Wife] a larger proportionate share of the marital estate. However, she has not been awarded liquid assets which she can readily access upon final distribution. The distribution of the FERS retirement account will be deferred until [Husband] retires. The distribution of [Husband's federal Thrift Savings Plan ("TSP")] consists of an IRA roll over. The Master utilized the IRA roll over approach to distribute the TSP based upon [Husband's] representation that a lump sum withdrawal in the absence of a roll over would result in the imposition of a substantial tax penalty. Thus, the distribution of these and the other significant assets in the marital estate, does not impact [Wife's] disposable income. As a result, the Master does conclude that [a]limony is necessary.

Master's Report and Recommendation, 12/16/2015, at 16.

Accordingly, while her recommendation awarded Wife 62% of the marital property, the Master emphasized that none of the parties' marital property consisted of liquid assets that would "impact [Wife's] disposable income." *Id.* Furthermore, the Master, as well as the trial court, credited Wife's testimony that her moderate monthly expenses exceed her income. *See* Trial Court Opinion, 5/11/2016, at 2-3.

With regard to credibility determinations, this Court has explained:

The issue of credibility of witnesses in a divorce case is not entirely to be resolved by the Master. The court has the duty to make a complete and independent review of all the evidence presented in a divorce action. This includes a complete review of the weight and credibility to be accorded to the testimony of the witnesses. The reviewing court must examine the record in detail so as to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods, and other factors by which credibility may be ascertained. However, where the issue is one of credibility and the Master is the one who heard the testimony and observed the demeanor of the witnesses the reviewing court must give his findings regarding credibility the fullest consideration.

- 7 -

*Rollman*, *supra*, 421 A.2d at 758 (internal citations omitted).

Our review of the transcript from the hearing supports the Master's determination that Mother provided credible testimony regarding her need for alimony. Although Husband focuses on the fact that Mother contributed $300 per month to the children's college funds, an arguably discretionary expenditure, he ignores Mother's testimony that her expenses exceed her income by more than $1,000.00 per month. *See* N.T., 11/10/2015, at 46-47. Therefore, even if Mother did not contribute to those accounts, her expenses would still significantly exceed her monthly income. Accordingly, no relief is warranted on Husband's first claim.

Next, Husband challenges the equitable distribution award. His argument is three-fold. First, he contends the trial court applied "an improper standard of complete, total deference to the Master's findings and legal conclusions[.]" Husband's Brief at 11. Second, Husband maintains the court erred "by disregarding [his] claim of shared marital [credit card] debt." *Id.* at 14. Third, he insists the Master abused her discretion by discrediting the live testimony of his expert real estate appraiser as to the valuation of the marital home, and, instead, crediting a written appraisal dated October 5, 2015. *Id.* at 17-26.

When reviewing an equitable distribution award, we are guided by the following:

> A trial court has broad discretion when fashioning an award
> of equitable distribution. *Dalrymple v. Kilishek*, 920 A.2d
> 1275, 1280 (Pa. Super. 2007). Our standard of review

- 8 -

when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." **Smith v. Smith**, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. **Id.** This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Wang v. Feng**, 888 A.2d 882, 887 (Pa. Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. **Id.** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Schenk v. Schenk**, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted).

**Biese v. Biese**, 979 A.2d 892, 895 (Pa. Super. 2009). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. **Sternlicht v. Sternlicht**, 822 A.2d 732, 742 (Pa. Super. 2003), *aff'd,* 583 Pa. 149, 876 A.2d 904 (2005). We are also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." **Moran v. Moran**, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing **Simeone v. Simeone**, 380 Pa. Super. 37, 551 A.2d 219, 225 (1988), *aff'd,* 525 Pa. 392, 581 A.2d 162 (1990)).

**Childress v. Bogosian**, 12 A.3d 448, 455–456 (Pa. Super. 2011). Further,

this Court has emphasized:

Although the master's report is entitled to great weight, that final responsibility for making the [equitable] distribution [of property] rests with the court. Our review is thus based on the court's distribution of property.

*Tagnani*, *supra*, 654 A.2d at 1138 (internal punctuation and quotations omitted).

We note, first, Husband's objection to the trial court's review of the Master's report and recommendation is specious. The trial court properly stated its standard of review in the opinion disposing of Husband's exceptions. *See* Trial Court Opinion, 5/11/2016, at 1 (stating "the divorce master's report and recommendation, although only advisory, is to be given great deference" and the "reviewing court has a duty to make a complete and independent review of the proceeding below."). Moreover, the trial court addressed each of Husband's exceptions, and, in fact, determined he was entitled to relief on one of his claims.[4]  *See* Trial Court Opinion, 5/11/2016, at 5-6. Therefore, Husband's assertion that the trial court gave "total deference to the Master's findings and legal conclusions" is not supported by the record. Husband's Brief at 11.

Second, with regard to the purported marital credit card debt, Husband insists the trial court "disregard[ed his] claim of shared marital debt[,]" specifically, a credit card balance of $3,600.27 that was owed as of October

---

[4] Husband ignores the fact that the trial court **granted** his exception regarding the amount of credit he was entitled to for the fair rental value of the marital home. *See* Trial Court Opinion, 5/11/2016, at 5-6. Indeed, the court's adjustment resulted in an additional $1,500.00 for Husband. *See id.*

- 10 -

2015.[5]   Husband's Brief at 14.   Husband maintains this marital debt was "simply excluded from the marital estate without any explanation." *Id.* at 15.

It is well-settled "[b]etween divorcing parties, debts which accrue to them jointly prior to separation are marital debts." *Litmans v. Litmans*, 673 A.2d 382, 391 (Pa. Super. 1996).   However, "[j]ust 'because a debt is characterized as marital[, this delineation] is not necessarily determinative of which party is liable for its satisfaction.'" *Biese v. Biese*, 979 A.2d 892, 896 (Pa. Super. 2009), *quoting* *Hicks v. Kubin*, 758 A.2d 202, 204 (Pa. Super. 2000).

A review of the Master's report and recommendation reveals the Master was well aware of Husband's assertion that he had substantially reduced the marital credit card debt post-separation, and that a balance of more than $3,500.00 remained outstanding.  *See* Master's Report and Recommendation 12/16/2015, at 10.  The trial court further addressed Husband's claim, stating:

> Contrary to [Husband's] assertion, there was no finding that the debt was nonmarital and the court did not err in its distribution. The marital debt was simply assigned to Husband as part of the overall equitable distribution.   In fact, the Court considered [Husband's] payment on the debt as a contribution towards the parties' acquisition of marital property.

Trial Court Opinion, 12/16/2016, at 5.

---

[5] We note Husband included copies of the credit card bills as exhibits during the Master's hearing, which show the parties owed $4,943.09 as of August 2013. *See* N.T., 11/10/2015, at 136-140, Defendant's Exhibit 31.  Husband claims since that time, he "spent $5,248.03 servicing the debt."  Husband's Brief at 14 (citation omitted).

We find no abuse of discretion on the part of the trial court. While Husband correctly asserts credit card debt accumulated pre-separation is marital debt, he fails to acknowledge that the court was not required to split the debt among the parties. The trial court's assignment of the credit card debt to Husband, who has consistently earned $50,000.00 more than Wife, does not, itself, constitute an abuse of discretion.

Third, with regard to the valuation of the marital residence, Husband contends the Master abused her discretion when she disregarded the testimony of his expert real estate appraiser, Richard J. Drzewiecki, that the fair market value of the home was $282,000.00, and accepted an appraised value of $252,000.00, that was calculated by Douglas J. Cropf,[6] who prepared an appraisal for Wife, in a report prepared in October of 2015. Although Drzewiecki's written report was authored ten months earlier, in January of 2015, Husband contends Drzewiecki's "oral in-court reaffirmation of his $282,000 appraisal at the Master's hearing was the best evidence and the most timely evidence of [the value of] the marital residence." Husband's Brief at 21-22. He further insists Drzewiecki relied upon more trustworthy comparables than Cropf, particularly with regard to location. *See id.* at 22-23. Husband states the Master did not "read the Cropf appraisal with a critical eye" and "wholly overlooked that the Cropf appraisal bears all of the markings

_____

[6] The parties stipulated to the authenticity and admissibility of Cropf's appraisal so that Cropf's testimony was not required at the hearing. *See* N.T., 11/10/2015, at 5-6.

of a result-driven appraisal of the marital residence." *Id.* at 25-26. Moreover, Husband asserts the Master's reasons for finding Drzewiecki's appraisal not credible were not supported by the record. *See id.* at 19.

Preliminarily, we note "[b]oth a master and a trial court have discretion to accept or reject an expert's testimony." *Childress*, *supra*, 12 A.3d at 456. Here, the Master gave a detailed explanation as to why she "placed very little weight on Mr. Drzewiecki's hearing testimony," particularly because he attempted to discredit the appraised value rendered by Cropf. Master's Report and Recommendation, 12/16/2015, at 4. First, the Master stated that although Drzewiecki testified he only "read" Cropf's appraisal and did not "review" it, "it was clear that the purpose of [his] testimony was to challenge the fair market value assigned by Mr. Cropf."[7] *Id.* at 3. Second, the Master found Drzewiecki's testimony did not "square with the contents of his fair market value appraisal," particularly with regard to the property located at 325 Lamplight Lane, which is located across the street from the marital residence. *Id.* Indeed, at the time Drzewiecki prepared his report, 325 Lamplight Lane was **listed for sale** at $282,500.00. However, it **subsequently sold** on September 30, 2015, for $255,000.00. *See id.* at 3-

---

[7] Indeed, Drzewiecki testified he did not prepare a "formal review" of Cropf's appraisal report. N.T., 11/10/2015, at 17. Rather, he stated he only "read" the report "to see whether there was anything incorrect about [his] report … not … to determine whether or not [Cropf] was incorrect." *Id.* at 17-18.

4. The Master highlighted the testimony of Drzewiecki that was inconsistent with the information listed in both his and Cropf's appraisal reports.[8] *See id.*

Third, the Master explained the comparable properties in the Cropf appraisal were more recent sales than those in the Drzewiecki appraisal. *See id.* Husband attempts to undermine this credibility determination by emphasizing that the Drzewiecki comparables were located much closer to the marital residence, that is, all were less than one mile away, while two of the three Cropf comparables were 2.5 and 7 miles, respectively, from the marital residence. *See* Husband's Brief at 24-25. However, the Master was well aware of the location of the comparable properties, and even appeared to discount one of Cropf's properties that was located in another town. *See* Master's Report and Recommendation, 12/16/2015, at 4. However, ultimately, the Master found the more recent sales included in the Cropf appraisal, particularly the property across the street from the marital residence, to be the most reflective of the value of the marital home. The Master stated:

> [I]n order to reach a conclusion with regard to the fair market value of the marital residence, this writer has carefully reviewed

_____

[8] We note, however, that the Master was mistaken on one point. She stated that Drzewiecki did not include the property at 325 Lamplight Lane in his appraisal. *See* Master's Report and Recommendation, 12/16/2015, at 4. This is technically incorrect. The listing at 325 Lamplight Lane was included as "Comparable Sale #5" in his report. *See* Appraisal of Real Property, 1/30/2015, at unnumbered 11. However, at the time of the appraisal, the property was not yet sold, and Drzewiecki noted in a supplemental addendum "Listing 5 was presented but not considered" in determining the value of the marital home. *See id.* at unnumbered 15.

the written appraisals submitted by both sides. This writer assigns very little weight to Mr. Drzewiecki's appraisal due to the fact that the comparable properties included in that appraisal sold in 2013 and 2014. Two of the three comparable properties included in the Cropf appraisal sold in August 2015 and September 2015 – ninety days prior to the Master's hearing. As a result, the Master concludes that the Cropf appraisal provides a more accurate picture of the value of homes similar to the Lamplight Lane property at or near the date of distribution. For this reason, the Master will accept the value submitted by Mr. Cropf of $252,500 as the fair market value of the marital residence for purposes of Equitable Distribution.

*Id.* Upon its review of the record, the trial court detected "no error in the Master … finding the most recent in time appraisal to be the most appropriate in determining the value of the marital residence." Trial Court Opinion, 5/11/2016, at 4. Husband provides us with no basis upon which to disagree. Accordingly, his third claim fails.

In his final issue, Husband contends the Master erred when she sustained Wife's hearsay objection to testimony by Drzewiecki, in which he attempted to explain why the property at 325 Lamplight Lane ultimately sold for $27,000.00 less than its list price. After noting the significant price differential, Drzewiecki testified: "So my question was why did it sell for so much less than what it was listed for? So we took the time to speak with the selling agent who told us that -- " N.T., 11/10/2015, at 21. At that point, Wife's attorney objected, on the basis of hearsay, and the Master sustained the objection. *See id.* at 21-22.

- 15 -

On appeal, Husband argues Drzewiecki's testimony was admissible under Pennsylvania Rule of Evidence 703.[9] The Rule provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. Husband maintains that Rule 703 provides an "exclusion" from the hearsay rule because the testimony he attempted to offer – *i.e.*, his discussion with the selling agent of the property – was the "type that is customarily relied on" by real estate appraisers. Husband's Brief at 27. Therefore, he asserts the testimony did not constitute hearsay, and the trial court erred in sustaining Wife's objection. Moreover, Husband insists the error was not harmless because he was prejudiced when the court precluded him from explaining the price differential, and, as a result, rejected his appraised value. *See id.* at 28-29.

Husband's claim fails. The explanation for the reduction in the price of the property between the listing in January 2015 and the eventual sale in September of 2015, provided by the agent who sold 325 Lamplight Lane, was **not** information Drzewiecki relied upon in determining the appraised value. Rather, Drzewiecki attempted to testify to a conversation he had with the

---

[9] Although generally we will reverse a trial court ruling on an evidentiary issue only if the court abused its discretion, we have stated that when the issue concerns the "proper interpretation" of the Pennsylvania Rules of Evidence, "the question is a legal one, which means our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa. Super. 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013).

selling agent months **after** he submitted his written report, and **after** the property was sold. That testimony would clearly constitute hearsay, since Husband offered it for the truth of the matter asserted, that is, to explain the reason for the price reduction. Accordingly, no relief is warranted on this claim.[10]

Because we find no error or abuse of discretion on the part of the trial court in its alimony and equitable distribution award, we affirm the decree in divorce.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017

---

[10] We note that in a supplemental addendum to his written appraisal, Drzewiecki commented that he did not consider the listing at 325 Lamplight Lane when valuing the marital residence "due to the motivation of the selling having a wrap around mortgage for the subject property and construction of a new home." Appraisal of Real Property, 1/30/2015, at unnumbered 15. However, in the testimony described above, Drzewiecki was not trying to explain why he did not consider the listing at 325 Lamplight Lane in his **initial valuation**. Rather, he was attempting to justify the price drop at the time of the sale of the property. Accordingly, the court did not err in sustaining Wife's objection to that testimony.